No. 41,409

ROY RAMSEY, *Appellee*, v. TRACY A. HAND, Warden of the Kansas State Penitentiary, *Appellant*.

(343 P. 2d 225)

*Charles N. Henson,* Assistant Attorney General, argued the cause, and *John Anderson, Jr.,* Attorney General, and *John A. Emerson,* Assistant Attorney General, were with him on the briefs for appellant.

*Gerald L. Goodell,* of Topeka, argued the cause, and *Lester M. Goodell, Margaret McGurnaghan, Marlin S. Casey, Raymond Briman,* and *Thomas R. Sewell,* all of Topeka, were with him on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a habeas corpus action by the warden of the state penitentiary from an order of the district court of Leavenworth County granting the petitioner's writ and directing his discharge.

The primary question presented is whether the district court of Crawford County, which originally tried the petitioner on a first degree murder charge, was without jurisdiction to accept his plea of guilty because of alleged failure of the district judge to find that appointment of counsel over petitioner's objection would not have been to his advantage.

The petitioner, Roy Ramsey (appellee), is presently confined in the Kansas State Penitentiary, pursuant to a conviction of first degree murder on October 16, 1948, and a sentence to confinement at hard labor for life adjudged on that date in the district court of Crawford County, Kansas. Ramsey entered a plea of guilty to the charge.

On June 7, 1957, Ramsey filed a petition for writ of habeas corpus in the district court of Leavenworth County, Kansas. This writ was denied in the lower court on June 18, 1957, and appealed to this court where the decision was affirmed. (*Ramsey v. Hand,* 183 Kan. 307, 327, P. 2d 1080.) The point now presented was not raised by the petitioner in that action.

On October 1, 1958, Ramsey filed another petition for writ of habeas corpus in the district court of Leavenworth County, and on November 10, 1958, the lower court found in favor of the petitioner and the writ was granted. Crawford County authorities immediately rearrested Ramsey and the warden (appellant) filed the present appeal. The appellant also moved this court to advance the date for hearing and to recommit the appellee to the Kansas

State Penitentiary pending the outcome of this appeal. These motions were granted.

The records of the city court of Pittsburg, Kansas, disclosed that on October 16, 1848, a complaint was filed in that court alleging that on or about the 14th day of January, 1948, Roy Ramsey and two others, while attempting to perpetrate a burglary, robbery and larceny, committed first degree murder. Ramsey appeared in court on October 16, 1948, and waived preliminary hearing. (For details see *Ramsey v. Hand,* supra.) On the same day an information was filed in the district court charging Ramsey with first degree murder.

A transcript of the proceedings in the district court of Crawford County, Kansas, relative to waiver of counsel by the petitioner discloses that pursuant to the request of the county attorney the trial court advised Ramsey concerning his right to have legal counsel. The transcript discloses Ramsey informed the trial judge pursuant to interrogatories that he was 33 years of age; that his home was in Chillicothe, Missouri; that he went to school as far as the seventh grade—two years of industrial school; and that he could read and write and understand the English language. He was then asked questions which he answered as follows:

"Judge Resler: Do you have a lawyer?

"Roy Ramsey: Do not need any.

"Judge Resler: Do you know you are entitled to one?

"Roy Ramsey: Yes sir.

"Judge Resler: The Court will appoint one as County Attorney just informed you.

"Roy Ramsey: Yes sir.

"Judge Resler: Did you see this waiver the County Attorney prepared?

"County Attorney Griffith: I will state that this is the waiver that we have ready for your signature, do you understand?

"Roy Ramsey: Yes sir.

"County Attorney Griffith: and we are ready to have a lawyer appointed for you.

"Roy Ramsey: Yes sir.

"Judge Resler: I will ask the Clerk of the District Court to read this Waiver to you, here in open Court."

The clerk of the district court thereupon read the waiver to Ramsey and it was voluntarily signed and acknowledged by him. Thereupon the county attorney read the information, to which Ramsey entered his plea of guilty.

The transcript was certified by the clerk of the district court of Crawford County, Kansas, as being a *true and correct copy of the shorthand notes taken by her at the hearing.* For reasons not shown in the abstract the official court reporter was not present.

The journal entry of the trial court dated October 16, 1948, failed to recite a finding by the trial court that the appointment of counsel by the court over Ramsey's written waiver and objection would not be to Ramsey's advantage.

The journal entry does, however, disclose that the State offered in evidence a statement duly executed by Ramsey, admitting his part in the crime as charged by the information, which Ramsey read and stated to be true. This statement was admitted into evidence with the permission of Ramsey. Additional statements were offered in evidence by the State and admitted with the permission of Ramsey after he had read such statements and acknowledged them to be true. Thereupon the trial court accepted Ramsey's plea of guilty to murder in the first degree as charged by the information.

On the 22nd day of February, 1958, Judge Resler, being the same judge who heard Ramsey's case on October 16, 1948, in the district court of Crawford County, entered an order *nunc pro tunc* correcting the journal entry in said case, which insofar as pertinent herein reads:

". . . The Court finds that adequate notice was given to the said Roy Ramsey by registered mail. The court also finds from the records of the Court and the minutes of the trial Judge in his docket, that there was a judgment and sentence duly pronounced and rendered in this action against the defendant, Roy Ramsey, on the —— day of October, 1948, whereby it was ordered, adjudged and decreed that defendant, Roy Ramsey, be sentenced to the Kansas State Penitentiary at Lansing, Kansas, for a term of life on his plea of guilty to first degree murder but that *through an oversight* or omission of the then County Attorney, *certain findings were omitted from the Journal Entry filed.* This court further finds that there should have been a finding in the Journal Entry that although defendant, Roy Ramsey, expressly waived Court appointed counsel, this Court also found that it would not be to the said defendant, Roy Ramsey's, advantage to have Court appointed counsel over his objection, pursuant to G. S. 1935, 62-1304, as amended.

"IT IS, THEREFORE, ORDERED that the Journal Entry of Judgment and sentence against defendant, Roy Ramsey, be corrected to cure this defect and that the following finding of the trial Court be inserted therein and made a part thereof, as though set out originally therein, to-wit:

" 'The Court also finds that the appointment of counsel by the Court over defendant Roy Ramsey's written waiver and objection would not be to his, the said Roy Ramsey's advantage'." (Emphasis added.)

The journal entry on Ramsey's petition for a writ of habeas corpus filed in the district court of Leavenworth County recites that the transcript of the proceedings in the district court of Crawford County, Kansas, certified by the clerk of the district court of Crawford County, Kansas, was introduced in evidence as petitioner's Exhibit.1. This exhibit was duly filed as a part of the petitioner's pleadings. The journal entry further recited:

"5. That said record and transcript of said proceedings discloses that at no time did the Court *express or make* a finding that the appointment of counsel for the Defendant Roy Ramsey, in said action, over his objection would not be to his advantage;" (Emphasis added.)

The court further found the original journal entry of.judgment of the district court of Crawford County entered on the 16th day of October, 1948, disclosed no such finding.

The trial court concluded there was not a strict compliance with the provisions of G. S. 1947 Supp., 62-1304 (identical to G. S. 1949, 62-1304); that the trial court of Crawford County was without jurisdiction to accept a plea of guilty to the offense of first degree murder on October 16, 1948; that the *nunc pro tunc* order was an attempt to show something in said action that never occurred; and by reason of the foregoing the journal entry of judgment, conviction, sentence and *nunc pro tunc* order were and are void. .

It was admitted at the time of the habeas corpus hearing that Ramsey had served his maximum sentence pursuant to a judgment, conviction and sentence of the crime of second degree burglary and larceny entered in Case No. 4066 in the district court of Douglas County, Kansas, on the 25th day of October, 1948, and is no longer being restrained of his liberty pursuant thereto. (See *Ramsey v. Hand,* supra.)

From the time of our first territorial legislature in 1855 to the year 1941, our code of criminal procedure provided, in substance, that if a person about to be arraigned for a·felony be without counsel to conduct his defense and be unable to employ counsel, it was the duty of the court to assign counsel at his request. (See G. S. 1935, 62-1304.) Neither this section, nor any other, made any provision for preserving any record connected with the appointment of any counsel for an accused, and this court was confronted on many occasions with contentions growing out of the failure of an accused to be represented by counsel. (See *Jones v. Amrine,* 154 Kan. 630, 121 P. 2d 263, which was decided after the above section

of the criminal code was amended, by treating a situation which arose prior to the amendment in 1941, where the rights of an accused to representation by counsel were not explained to him by the court.)

To forestall such controversies and to provide for a definite and specific record in the trial concerning the appointment of counsel for the accused and of matters pertinent thereto, the legislature amended the section of the above statute by the enactment of Laws of 1941, ch. 291, § 1, now appearing as G. S. 1949, 62-1304. While the appellee in the instant case was tried in 1948 the applicable provisions are precisely as set out in G. S. 1949, 62-1304, to which reference will hereafter be made. That portion of the above statute applicable to this appeal reads:

"[1] *If any person* about to be arraigned upon an indictment or *information* for any offense against the laws of this state *be without counsel to conduct his defense, it shall be the duty of the court to inform him that he is entitled to counsel,* and to give him an opportunity to employ counsel of his own choosing, if he states that he is able and willing to do so. [2] If he does ask to consult counsel of his own choosing, the court shall permit him to do so, if such counsel is within the territorial jurisdiction of the court. [3] *If he is not able and willing to employ counsel,* and does not ask to consult counsel of his own choosing, *the court shall appoint counsel to represent him, unless he states in writing that he does not want counsel to represent him and the court shall find that the appointment of counsel over his objection will not be to his advantage.* [4] *A record of such proceeding shall be made by the court reporter, which shall be transcribed and reduced to writing by the reporter, who shall certify to the correctness of such transcript, and such transcript shall be filed and made a part of the files in the cause.* [5] The substance of the proceedings provided for herein shall be entered of record in the journal and shall be incorporated in the journal entry of trial and judgment . . ." (Emphasis added and numbers inserted.)

The quoted provisions of the above statute were before the court in *Davis v. Hudspeth,* 161 Kan. 354, 167 P. 2d 293, which held:

"When any person is about to be arraigned upon an information or indictment all of the provisions of G. S. 1943 Supp. 62-1304, are mandatory and strict compliance must be made therewith in order to give a court jurisdiction to accept a plea of guilty." (Syl. ¶ 1.)

The foregoing statement of the law with reference to the provisions of 62-1304, *supra,* as amended in 1941 (now G. S. 1949, 62-1304) has been consistently followed in *Brandt v. Hudspeth,* 162 Kan. 601, 178 P. 2d 224; *Selbe v. Hudspeth,* 175 Kan. 154, 259 P. 2d 204; and *State v. Oldham,* 178 Kan. 337, 285 P. 2d 775.

Our present decision must be reconciled with these cases.

The foregoing rule announced in the *Davis case* was upon *a record which failed to disclose:* (1) That the district court advised the petitioner of his right to counsel; (2) that the petitioner waived in writing his right to have counsel appointed for him; and (3) that the court made a finding to the effect that the appointment of counsel over the objection of the accused would not be to his advantage. It was therefore said the record *wholly failed* to show that the district court complied with the mandatory enactment of the legislature. Under these circumstances it was relatively simple to state the rule as above quoted.

The facts on the point in question in the *Brandt* and *Oldham* cases were almost identical to those upon which the decision was made in the *Davis* case.

In some respects the facts in *Selbe v. Hudspeth,* supra, are similar to the facts presently before the court. There the petitioner alleged that he had not been properly advised as to his right to counsel; that he was not advised he was entitled to a trial by jury; and that had he been so advised he would have entered a plea of not guilty. At a later date the petitioner filed an amendment to his petition expanding on the advice given him as to his rights by a deputy sheriff. The accused had signed a written waiver to the effect that he did not wish to be represented by an attorney. The journal entry disclosed no finding that appointment of counsel would not be to the advantage of the accused, nor was there any statement showing compliance as to the completion of the record. Further, the court reporter was unable to find notes for the period covering the dates in question. This was interpreted as a concession that even if the court reporter made a record of the proceeding, he did not transcribe those notes, certify the correctness of the transcript and file the same as the statute requires. The court stated in the *Selbe* case the *purpose of the statute was to provide for a record that disclosed fully what occurred,* so that there could be no controversy as to what advice was given to the accused by the court and his responses and answers to any questions asked him or as to whether the trial court made the findings requisite under the statute. The court further stated:

". . . The statute placed plain and unambiguous duties upon the trial court as well as upon the court reporter and their failure to perform those duties cannot be condoned. The journal entry of judgment on which the

respondent relies does not disclose compliance with the statutory mandate." (p. 157.)

In other words, the *Selbe* decision has made it clear that *the primary right of an accused* to a trial safeguarded as provided by the statute *must be disclosed by a record* which shows such rights were safeguarded.

On a *factual basis* it is quite apparent the foregoing decisions can be distinguished from the facts in the present case. We are, however, confronted with the broad language used in Syllabus ¶ 1 of the *Davis* case and the following statement in *Selbe v. Hudspeth,* supra:

". . . The language used in the statute is clearly a command to the trial court and the court reporter, and cannot be interpreted as being merely directory, nor as leaving something to discretion." (pp. 156, 157.)

Clearly, the force and effect of the foregoing language, if interpreted to mean that *all* provisions are jurisdictional, is compromised by language later used in the opinion as follows:

". . . *What might be the situation if otherwise complete proceedings were taken by the court reporter, duly transcribed and certified, but not filed is not the question before us* . . ." (p. 158.) (Emphasis added.)

Upon the facts and circumstances presented in the instant case we are directly confronted with a determination as to which of the above quoted provisions of 62-1304, *supra,* are *jurisdictional* to the acceptance of a plea of guilty from an accused where he is not represented by counsel.

It cannot be successfully argued that the *jurisdiction* of the trial court *to accept a plea of guilty* from an accused is dependent upon *conditions subsequent* to the acceptance of such plea. A careful reading of Syllabus ¶ 1 in the *Davis* case inherently discloses a limitation of the jurisdictional provisions in 62-1304, *supra.* It would be absurd to argue that a trial court was required to halt proceedings in the trial of a case, after an accused had entered a plea of guilty, to have the court reporter transcribe the proceedings to that point, reduce them to writing and file the transcript disclosing compliance with all provisions in the statute prior to the acceptance of such plea of guilty. The same would be true concerning the entry of the substance of such proceedings of record in the journal and their incorporation in the journal entry of trial and judgment.

It must therefore be held that only those *primary rights of an accused* to a trial, safeguarded as provided by the statute, are jurisdictional to the acceptance of a plea. These jurisdictional requirements under the above quoted provisions of 62-1304, *supra,* are the first three complete sentences identified by numbers [1], [2] and [3]. Proof that the foregoing jurisdictional requirements have been met, when challenged, can be established only by a record of such proceedings made as provided in the statute. These provisions are identified by numbers [4] and [5] in the quoted portion of 62-1304, *supra.*

The foregoing interpretation of 62-1304, *supra,* is not inconsistent with the prior decisions of this court in *Davis v. Hudspeth,* supra; *Brandt v. Hudspeth,* supra; *Selbe v. Hudspeth,* supra; and *State v. Oldham,* supra, when each of these cases is interpreted in relation to the facts with which the court was there confronted.

Did the trial court in the instant case make a finding that the appointment of counsel over the objection of the accused would not be to his advantage?

It must be observed the wording of the provision "and the court shall find that the appointment of counsel over his objection will not be to his advantage" does not require such finding to be an *express* finding which the trial court state in the record of the trial proceedings. If not expressly stated, such finding would not appear in the transcript of the record of such proceedings, and no provision of the statute requires that it appear in the transcript. However, if such finding was in fact made by the trial judge, it must appear in the journal entry of the trial and judgment.

Where an accused is not represented by counsel and the trial court has fully advised him of his right to counsel as provided in the statute, the execution of a written waiver by the accused with full knowledge of his rights completes the jurisdictional requirements prior to the acceptance of a plea of guilty so far as the *accused* himself is concerned. The finding that the appointment of counsel over the objection of the accused will not be to his advantage is a function of the trial judge. It involves a mental process.

That everyone is presumed to know the law is a rule so well established that it requires no citation of authorities. *A fortiori,* a trial judge is presumed to know the law. Referring to the transcript of the record, upon which the appellee relies, it is implicit that the

trial court in accepting the accused's written waiver of counsel and plea of guilty, believed and duly found the appointment of counsel over the accused's waiver and objection would not have been to his advantage. In this case it must be noted that the trial court did not accept Ramsey's plea of guilty until after the county attorney had presented the evidence.

The order *nunc pro tunc,* entered by the same trial judge in the district court of Crawford County who tried the case resulting in the conviction of the accused, recited that it was through an oversight the finding in question was omitted from the journal entry filed. A fair interpretation of the recitals in the *nunc pro tunc* order is that the trial court actually made the required finding at the time of trial, but through inadvertence such finding was omitted from the journal entry. It must be assumed that the trial judge acted in good faith in correcting the journal entry by order *nunc pro tunc* in order that it might accurately reflect what transpired in the conviction proceedings. Such diligence and good faith on the part of the district courts must necessarily be assumed in all cases.

It has been consistently held that the power to enter judgments, decrees and orders *nunc pro tunc* is inherent in courts, and if the journal entry fails to accurately reflect the judgment actually rendered, it is the duty of the court to make it speak the truth. (*Cazzell v. Cazzell,* 133 Kan. 766, 3 P. 2d 479; *Bush v. Bush,* 158 Kan. 760, 150 P. 2d 168; and *Tincknell v. Tincknell,* 141 Kan. 873, 44 P. 2d 212.) While the foregoing cases are all civil, no reason is apparent why the same reasoning should not apply to a criminal case. In *Wilson v. Hudspeth,* 165 Kan. 666, 198 P. 2d 165, the journal entry in a criminal action was defective and the court outlined a procedure to supply the inadvertent omissions by a *nunc pro tunc* order in a habeas corpus action.

When a motion for an order *nunc pro tunc* is pending, the trial judge's personal recollection of the facts and circumstances under which the judgment was rendered and of the court's purpose and intention in rendering it has the probative force of evidence bearing on the propriety of granting or denying the motion presented for determination. (*Cazzell v. Cazzell,* supra.) This principle was also recognized in *Tincknell v. Tincknell,* supra.

In the instant case the district court of Crawford County had before it the factual question of whether it had found that ap-

pointment of counsel would not have been to the appellee's advantage. The court had a right to rely, not only on the transcript, but on its own recollection. The court did so, and determined that the disputed finding was made but was inadvertently omitted from the journal entry. It was thus proper for the court to correct the journal entry *nunc pro tunc* in order that it might accurately reflect what actually transpired in the conviction proceedings. It follows that the jurisdictional requirements of 62-1304, *supra*, have been fully met.

It is clear that the filing of a journal entry *nunc pro tunc* has the same effect as if filed in the first instance. The function of a *nunc pro tunc* order is not to make an order now for then, but to enter now for then an order previously made. (*Bush v. Bush,* supra.) The substance of the findings made by the district court of Leavenworth County as reflected by its journal entry was to collaterally attack the *nunc pro tunc* order made by the district court of Crawford County. This cannot be done. A *nunc pro tunc* entry of record is competent evidence of the facts which it recites. It is conclusive on any other court in which the record is offered in evidence, and it cannot be impeached collaterally. (49 C. J. S., Judgments, § 121, pp. 255, 256; *Miller v. Muir,* 115 Ind. App. 335, 56 N. E. 2d 496; *In re Cannon's Guardianship,* 182 Okla. 171, 77 P. 2d 64; and *Allen v. Bagley and F. & H. Sav. & L. Assn.,* 234 Mo. App. 891, 133 S. W. 2d 1027.)

In *Gates v. Gates,* 160 Kan. 428, 163 P. 2d 395, a divorce hearing was held on June 4, 1943, and an entry on the trial docket indicated that the case was taken under advisement on that date. On March 9, 1944, the court stated that a judgment of divorce had been rendered on June 4, 1943, and thereafter on November 30, 1944, a journal entry of such judgment was filed. On appeal to this court an extensive review of the authorities dealing with *nunc pro tunc* orders in general was made and it was concluded:

"While none of the authorities to which we have heretofore referred deals with the exact situation confronting us at the moment the principles involved are similar in character, and it must follow that if the trial docket, the journal entry of judgment and the court journal may be corrected by a court to speak the truth, it may, where the question of whether or not it has actually rendered a judgment is raised by motion to reopen the case and permit additional testimony, determine that matter on personal recollection of what its decision was at the time the case was before it. To hold otherwise would only result in confusion and intolerable consequences. We therefore hold that judgment for divorce and custody of the minor child was rendered on June 4, 1943, as

found by the trial court and that its decision on that factual question was conclusive and is not open for review on appeal." (p. 435.)

It may be argued by analogy that if the factual finding of the trial court as to what transpired before it is conclusive on appeal, surely such determination made by the district court of Crawford County in the instant case is not subject to a collateral attack in a habeas corpus action in the district court of Leavenworth County.

The appellant admits, after an examination of the original record and transcript in Ramsey's conviction proceeding, there is no express showing therein that the court found the appointment of counsel over Ramsey's objection would not be to his advantage, and further admits there was no transcript of such proceeding filed. The omission of the finding from the transcript has been answered. The failure to file the transcript, not being jurisdictional, has been waived by the appellee in asserting the transcript and in relying upon it to establish his grounds for release.

Furthermore, the fact that the clerk of the district court of Crawford County took notes and prepared the transcript, which she certified to be a true and correct copy of the shorthand notes taken by her at the hearing, and not the court reporter as required by the statute, cannot be asserted by the appellee, since this is likewise not jurisdictional to the acceptance of a plea of guilty. This requirement has been waived by the appellee in asserting the transcript of the record made by the clerk and in relying upon it to establish his grounds for release. The record of the proceedings asserted by the appellee, together with the original journal entry and the *nunc pro tunc* order, established that the jurisdictional requirements of 62-1304, *supra,* have been met by the trial court prior to its acceptance of the appellee's plea of guilty.

It must be assumed in the absence of any evidence to the contrary that the clerk of the district court of Crawford County was directed by the trial judge to report the proceedings of the trial and was therefore *acting* as the court reporter. Insofar as the record before this court discloses, her shorthand notes of the trial proceedings have not been challenged as being inaccurate. The clerk transcribed these notes and reduced them to writing whereupon she certified the transcript to be correct. Upon this transcript the appellee relied and asserted it as a true and correct record of the trial proceedings.

We therefore hold the primary rights of the accused to a trial,

safeguarded as provided in 62-1304, *supra,* were properly disclosed by a record which shows that such rights were safeguarded.

The judgment of the district court of Leavenworth County granting the appellee's petition for a writ of habeas corpus and directing his discharge is reversed.